3 P.3d 1133

Clark J. KERR and Billie Sue Kerr, husband and wife, Susan Moran, Steve Allen and John Udall, individually and as representatives of the class comprised of federal employees who paid Arizona income taxes on federal retirement contributions during one or more of the years 1984 to date, Plaintiffs–Appellees,

v.

Mark J. KILLIAN, in his capacity as Director of the Arizona Department of Revenue, the Arizona Department of Revenue of the State of Arizona, Defendants–Appellants.

State of Arizona, ex rel., the Arizona
Department of Revenue,
Plaintiffs–Appellants,

v.

Clark J. Kerr and Billie Sue
Kerr, husband and wife,
Defendants–Appellees.

Clark J. Kerr and Billie Sue Kerr, husband and wife; and their attorneys, Bonn, Luscher, Padden & Wilkins, Chartered and O'Neil, Cannon & Hollman, S.C., Counterclaimants–Appellees,

v.

State of Arizona, ex rel., the Arizona
Department of Revenue, Counterdefendants–Appellants.

No. 1 CA–TX 98–0014.

Court of Appeals of Arizona,
Division 1, Department T.

Jan. 27, 2000.

As Amended April 13, 2000.

Janet A. Napolitano, The Attorney General by Patrick Irvine, Assistant Attorney General, Phoenix, for Appellants.

Bonn, Luscher, Padden & Wilkins, Chartered by Paul V. Bonn, Randall D. Wilkins, John H. Cassidy, D. Michael Hall, Phoenix, and O'Neil, Cannon & Hollman, S.C. by Eugene O. Duffy, Milwaukee, WI, for Appellees.

Marikay Lee–Martinez, Phoenix, Amicus Curiae.

J. Robert Cuatto, Phoenix, Amicus Curiae.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 This is an appeal by the Arizona Department of Revenue from an award of fees to attorneys who successfully represented taxpayers on a refund claim. We affirm.

¶ 2 Before 1991, Arizona exempted from state income tax the amount of money state and local government employees paid into retirement plans. In *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the United States Supreme Court invalidated a similar tax provision because no exemption was afforded federal employees. The court ruled that the exemption was not in accord with the Intergovernmental Tax Immunity Doctrine codified in 4 U.S.C. section 111.

¶ 3 In November 1989 the five taxpayers, who are or were federal employees and who are the appellees in this case, sued the Arizona Department of Revenue in the tax court in a case styled *Kerr v. Waddell*. They brought the action on behalf of themselves and all similarly situated persons, and they sought a declaration that the Arizona tax scheme violated the federal statute, and asked for injunctive relief, damages, and refunds. While the action was pending, the tax court directed the Department to include a notice in its tax instruction booklets about the pendency of the litigation, as well as a form that current and former federal employees could file to preserve any right to refunds that might be due them if the taxpayers prevailed. This was done in the 1990 instruction booklets and in instruction book-

lets from 1994 through 1998. The tax court later declared the Department's refusal to exempt contributions to federal retirement plans invalid, but declined other relief.

¶ 4 The decision was appealed, and in *Kerr v. Waddell*, 183 Ariz. 1, 899 P.2d 162 (App. 1994) ("*Kerr I*") we held that the taxpayers' failure to invoke their administrative remedies before the Department and the State Board of Tax Appeals had deprived the tax court of jurisdiction over their state law claims for declaratory relief and refunds. We also held that the failure to invoke administrative remedies did not affect the viability of the taxpayers' claims for declaratory and injunctive relief and damages under 42 U.S.C. section 1983. We further held that the exemption scheme violated 4 U.S.C. section 111.

¶ 5 On review, the Arizona Supreme Court returned the case to us for reconsideration in light of the intervening decision in *National Private Truck Council v. Oklahoma Tax Com'n*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). On reconsideration we vacated *Kerr I* and held that the taxpayers' failure to invoke their administrative remedies foreclosed the tax court from affording them any relief. We remanded to the tax court with directions to dismiss the action in its entirety. *See Kerr v. Waddell*, 185 Ariz. 457, 916 P.2d 1173 (App.1996) ("*Kerr II*").

¶ 6 When the taxpayers filed their lawsuit they also filed administrative claims with the Department on behalf of themselves and the putative class requesting refunds on the same grounds asserted in the cases they filed in the tax court in *Kerr v. Waddell*. In 1993, a hearing officer for the Department held that the Department had no legal authority to pass on the legality of the statutory scheme or to recognize a class refund claim.

¶ 7 The taxpayers appealed the hearing officer's ruling. The Board of Tax Appeals heard the matter in 1994 and ruled on it in 1997, holding that neither the Department nor the Board could entertain a class refund claim. It also held that the taxpayers who were parties to the administrative proceeding were entitled to refunds for 1985 through 1990.

¶ 8 The taxpayers then began this action in the tax court to appeal the Board's ruling. Two months later, the Governor of Arizona directed the Department to make refunds for the tax years 1985 through 1990 to all taxpayers who had filed timely refund claims, whether they were parties to the administrative action or not.

¶ 9 The taxpayers asked that their attorneys be awarded 20% of the total refunds that the Department had paid and would pay pursuant to the governor's direction. Over the Department's opposition, the court ruled that the common fund doctrine applied and that the taxpayers' attorneys were entitled to an award of reasonable fees. This was subsequently confirmed at 20% of the refunds. The fee will be approximately $3.2 million which includes costs and expenses. The Department brought this appeal.

## THE DEPARTMENT IS AGGRIEVED BY THE JUDGMENT

¶ 10 The taxpayers argue that this appeal should be dismissed on the grounds that the Department is not aggrieved by the fee award. A party is "aggrieved" by a judgment if it denies that party some personal or property right or imposes on that party some substantial burden or obligation. *See Matter of Gubser*, 126 Ariz. 303, 306, 614 P.2d 845, 848 (1980). The denial or imposition must flow directly from the judgment, and not merely from applying the legal principle established in the judgment to another proceeding. *See In re Roseman's Estate*, 68 Ariz. 198, 200, 203 P.2d 867, 868 (1949).

¶ 11 Aggrievement by all or part of a judgment does not remove all limitations on the scope of a party's appeal. A party who is aggrieved by a judgment may nevertheless lack standing to assert particular arguments in attempting to secure a reversal of a judgment. *See Goglia v. Bodnar*, 156 Ariz. 12, 18, 749 P.2d 921, 927 (App.1987). Lack of aggrievement is a jurisdictional defect, but lack of standing to urge a particular argument is not. *See Matter of Strobel*, 149 Ariz. 213, 216, 717 P.2d 892, 895 (1986). Since Arizona has no analog to the "case or controversy" provision in its constitution, our reluctance to consider issues raised where there is

no standing is a rule of judicial restraint. *See State v. B Bar Enterprises, Inc.*, 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982).

¶ 12 After this appeal was filed, the taxpayers moved to dismiss it on the grounds that the Department was not an aggrieved party. Another panel of this court considered the motion and denied it, concluding that the taxpayers had failed to show that the Department was not aggrieved but had shown at most that the Department might not have standing to make one or more of the arguments included in the opening brief.

¶ 13 The taxpayers now contend that the only way in which the Department could possibly be aggrieved is because it will be required to pay from its own funds 20% of the 26 refunds that it paid in full before the court ordered it to withhold 20% of each refund. They go on to argue that because the Department did not address the issue of these 26 refunds in its opening brief, it has waived that issue on appeal and with that waiver, the Department's aggrieved status evaporates.

¶ 14 The problem with the taxpayers' argument is that the issue was not waived. While the Department did not refer to the 26 refunds in its opening brief, it did raise them as a response to a motion to dismiss which was filed by the taxpayers. The Department prevailed on that motion. If that were not enough, the question whether the Department must pay the fees as to the 26 refunds is subsumed in the Department's general attack on the applicability of the common fund doctrine to tax refund cases. In other words, if the Department were to prevail on its argument that the common fund doctrine does not apply in this case, it would not have to pay the fees for the 26 refunds.

¶ 15 We believe that the Department has carried its burden of demonstrating that it is aggrieved by the judgment. First, there is the matter of having to pay 20% of 26 refunds out of the Department's own funds. Then, as the Department pointed out in its response to the motion to dismiss, the judgment required it to undertake multiple mail-

ings that cost between $10,000 and $15,000 more than it would have otherwise had to pay. Finally, the Department must undertake the administrative task of withholding part of each refund and periodically accounting for and remitting the amounts withheld to the taxpayer's counsel.

## THE DEPARTMENT DOES NOT HAVE STANDING TO ASSERT THE DUE PROCESS RIGHTS OF THE NON–PARTY TAXPAYERS

¶ 16 The Department challenges the award on the theory that the procedure used to arrive at the award violated the process of law due non-party taxpayers because those taxpayers did not receive adequate notice that a common fund award would be sought. The Department lacks standing to seek reversal on the basis of this argument because the right to due process asserted does not belong to the Department. As we noted in *State v. B Bar Enterprises, Inc.*, 133 Ariz. at 101 n. 2, 649 P.2d at 980 n. 2, a litigant may be accorded standing to assert the constitutional rights of a third person only if the litigant has a substantial relationship to the third person, the third person is unable to assert the constitutional rights on his or her own behalf, and failing to grant the litigant standing would dilute the third person's constitutional rights. None of these requirements is met here. The Department's attempt to assume a protective role as to non-party taxpayers can hardly be characterized as the manifestation of a substantial relationship in view of the Department's unceasing efforts over the last nine years to deny these taxpayers any refunds at all. Moreover, the non-party taxpayers were able to assert their own rights. After the tax court ruled that the common fund rule applied, it ordered that notice of the hearing to determine the percentage of fees to be awarded be given to all of the taxpayers entitled to a refund. This was done. The court received communication from some of the non-party taxpayers on the common fund issue, and at the hearing on what percentage should be paid, several non-party taxpayers appeared and addressed the court. We agree with the trial court that notice was adequate.

## THE DEPARTMENT IS NOT COLLATERALLY ESTOPPED TO CHALLENGE A COMMON FUND RECOVERY

¶ 17 The taxpayers argue that the judgment of the tax court, the collection of which became the subject of *Larkin v. State ex. rel. Rottas,* 175 Ariz. 417, 857 P.2d 1271 (App.1992), collaterally estops the Department from contending in this litigation that the common fund doctrine is inapplicable in state tax refund cases. The taxpayers point out that in the *Larkin* judgment the tax court declined to certify a class action, holding that under Arizona law a judgment for or against the state on a tax matter of public and general interest is binding and conclusive on the state. Because the judgment included a common fund fees award and was approved as to form by an assistant attorney general, the taxpayers argue that the Department is now bound by the principle that the common fund doctrine applies in all state tax cases.

¶ 18 We disagree because we do not know whether the issue was actually litigated in *Larkin,* whether there was a full and fair opportunity to litigate it, whether resolution was essential to the decision, or whether there was a final and valid decision on the merits. *See Irby Construction Co. v. Arizona Dept. of Revenue,* 184 Ariz. 105, 107, 907 P.2d 74, 76 (App.1995) (explaining the requisites for the application of collateral estoppel).

## THE COURT DID NOT ERR IN AWARDING FEES UNDER THE COMMON FUND DOCTRINE

¶ 19 The common fund doctrine is an exception to the general rule that, in the absence of statute or contract, each side in a litigated case must bear its own attorneys' fees. *See Matter of Estate of Brown,* 137 Ariz. 309, 312, 670 P.2d 414, 417 (App. 1983). Under the common fund doctrine a court may award attorneys' fees to counsel for the prevailing side whose efforts in litigation create or preserve a common fund from which others who have undertaken no risk or

cost will nevertheless benefit. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Steinfeld v. Zeckendorf,* 15 Ariz. 335, 342, 138 P. 1044, 1047 (1914). The purpose of the doctrine is to compensate counsel for producing such benefits and to preclude the unjust enrichment of those who receive the benefits. *See Matter of Estate of Brown,* 137 Ariz. at 313, 670 P.2d at 418.

¶ 20 The Department argues the taxpayers waived any claim for fees under this theory because fees were not sought under the common fund doctrine in the original *Kerr* complaint or in the administrative process. The doctrine was first invoked at the time of the initial appeal to the tax court. The Department has shown no prejudice in this respect and we believe the request for fees under the common fund doctrine came soon enough.

¶ 21 The Department next argues that *Sprague v. Ticonic Nat. Bank,* 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) holds that equitable awards of fees are "appropriate only in exceptional cases and for dominating reasons of justice." It cites *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), for the proposition that equitable doctrines that may apply in non-tax cases will not be applied in tax refund cases. *Brockamp* is not very helpful. There the court rejected a bid by taxpayers to obtain equitable tolling of the time within which to file for refunds on the ground that their alcoholism or senility was responsible for their delay. Based on an exhaustive review of the federal refund statutes, the court concluded that Congress did not intend courts to read other unmentioned, open-ended equitable exceptions into the statutes. The Department contends that A.R.S. sections 42–115, 42–122, 42–124, 42–129 and 42–139.14 constitute an equally comprehensive statement by our legislature of the procedures and circumstances that permit the recovery of attorneys' fees in tax litigation. The Department also points to our statement in *City of Phoenix v. Paper Distributors of Arizona, Inc.,* 186 Ariz. 564, 566, 925 P.2d 705, 707 (App.1996) to the effect that by enacting Arizona Revised Statutes Annotated ("A.R.S.") section 12–348 the legislature intended "to prescribe a uniform standard for fee awards which was to exclusively apply to all tax cases."

¶ 22 We do not believe our legislature has preempted application of the common fund doctrine. The "uniform standard" the Department refers to governs the shifting of fees to a losing governmental entity and has nothing to do with spreading fees among all the prevailing taxpayers who benefit from a lawyer's efforts. *See Kadish v. Arizona State Land Dept.,* 177 Ariz. 322, 328, 868 P.2d 335, 341 (App.1993) ("A.R.S. section 12–348 provides when fees shall be awarded against government entities and specifies when fees may not be awarded under the statute, but does not bar awards of fees pursuant to other statutes or equitable theories.").

¶ 23 The Department makes a series of contentions which focus on the dissimilarities between this case and other cases in which the common fund doctrine has been invoked. It cites *Dennis v. State,* 234 Neb. 427, 451 N.W.2d 676, 682 (1990) (*rev'd on other grounds*); *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991); *Hagge v. Iowa Dept. of Revenue and Finance,* 539 N.W.2d 148, 154, (Iowa, 1995); and *Oklahoma Tax Com'n v. Ricks,* 885 P.2d 1336, 1342 (Okla.1994). It points out the common fund awards generally result from settlements or recoveries mandated by court order and that such is not the case here. In a similar vein, the Department argues that there is no common fund in this case because the money it owes in refunds has not been segregated from other funds in the Department's control, that the funds are not in the tax court's control, and that the prevailing taxpayers in this case had to file their own refund claims and will not realize a benefit simply by doing nothing, as has occurred in other common fund cases.

¶ 24 The Department's arguments are too technical. We agree with what the Supreme Court of North Carolina said about a similar argument in the case of *Bailey v. State,* 348 N.C. 130, 500 S.E.2d 54 (1998):

The primary problem faced by courts in determining whether a shifting of fees is appropriate under the common-fund doctrine is deciding whether some finite benefit flows to a determinable group of plaintiffs. If the benefit reaped by the representative plaintiffs merely "vindicate[s] a general social grievance," *Boeing* 444 U.S. at 479, 100 S.Ct. at 749, 62 L.Ed.2d at 682, or redounds to the benefit of the public at large, then the common-fund doctrine will not operate to shift the burden of attorney's fees. *Id.* However, in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court noted that the common-fund doctrine has been appropriately applied in cases (1) where the classes of persons benefitting from the lawsuit were small and easily identifiable, (2) where the benefits could be traced accurately, and (3) where the costs could be shifted to those benefitting with some precision. *Id.* at 264 n. 39, 95 S.Ct. at 1625 n. 39, 44 L.Ed.2d at 157–58 n. 39.

. . . .

In the present case, the named plaintiffs have recovered a determinate fund for the benefit of every member of the class whom they represent. The defendant's liability has been proven. The qualifications for class membership have been established, and the formula for computing individual refunds has been set. Thus, the judgment fund itself is a quantifiable sum that has been created by the litigation undertaken by the representative plaintiffs. All the remaining class beneficiaries need to do in order to recover their proper refund or credit is to prove their individual claims against the judgment fund. As such, we are persuaded that the recovery at issue in this case properly constitutes a common fund for purposes of shifting attorney's fees under the common-fund doctrine.

*Bailey,* 500 S.E.2d at 72–73; *Community Care Centers, Inc. v. Indiana Family & Soc. Serv. Admin.,* 716 N.E.2d 519, 544–50 (Ind. App.1999) (rejecting as too narrow the determination in *Hagge* that common fund doctrine does not apply in tax refund cases). We reject the idea that *Bailey* does not apply because it dealt with a certifiable class. The salient point is that here, as in *Bailey,* counsel were responsible for creating a "common fund."

¶ 25 The Department denies that there was a causal connection between the litigation and the Department's decision to make the refunds. It says that it arrived at the decision to make the refunds based on its interpretation of cases decided in the United States Supreme Court and elsewhere. The trial court was not compelled to accept that as a fact and neither are we. *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), which the Department says it followed, was decided four years before the Department decided to pay.

¶ 26 Moreover, at a hearing to determine the appropriate amount of the fees, an expert witness testified that based on his knowledge of this case, the refund was the result of nine years of effort on the part of the taxpayers' lawyers. On questioning by the judge, counsel for the Department conceded that the fact that the court had ordered the Department to give notice of the pending litigation contributed greatly to the number of requests for refunds that were filed.

¶ 27 Finally, we address the Department's contention that affirming the tax court will "create new law that will entitle any party who prevails in an administrative or judicial proceeding on an issue of tax law to claim a cut of the monies paid to other taxpayers by the application of the same rules of law." Equitable principles in general, and the common fund doctrine in particular, are not so rigid as the Department supposes. The Department itself calls our attention to the following passage from Rossi *Attorneys Fees, Second Edition* (Lawyers Cooperative Publishing Co.1995):

Limitations on the common fund doctrine have frequently been announced by the courts. Some decisions have noted that care and caution must be exercised by the courts in making these fee allowances. Other courts have stated that since application of the principle is capable of great abuse, it is exercised only in exceptional

**220**

circumstances and for dominating reasons of justice. An attorney who seeks to impose his fees upon a fund in court has the burden to show that his claim comes fairly and squarely under the equitable principles upon which such fee allowances are made.

¶ 28 We do not believe the tax court disregarded any limitation expressed in the passage from Rossi. This case, which involved nine years of unrelenting opposition on the part of the Department, reflects the exceptional circumstances that support the award.

## THE FEE AWARD WAS REASONABLE

¶ 29 The taxpayers called expert witnesses who testified that the fee award was reasonable. The Department did not contest this testimony but now focuses its attack on the amount of the award by arguing that most of the time the attorneys spent related to legal issues and theories that were "separate" from the substantive issue that led to the refund and that, indeed, the taxpayers did not prevail on those issues. Specifically, it believes the court should not have taken into account time the attorneys spent in working on *Kerr I* and *Kerr II*. Since fee requests were denied in *Kerr*, the Department also argues that the doctrine of res judicata bars fees here.

 ¶ 30 We do not believe the court erred in considering time the attorneys spent on *Kerr I* and *Kerr II*. Hindsight may show that not every theory and procedure the attorneys pursued bore direct fruit, but what the attorneys did in those cases was reasonable and ultimately contributed to the taxpayers' success. For example, it was not unreasonable for the taxpayers to proceed administratively and in the tax court simultaneously to avoid procedural defenses. See *Reich v. Collins*, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). So too, it was by virtue of *Kerr I* that the statute authorizing refunds for state and municipal employees was declared unconstitutional and the Department was required to give notice of the pending refund litigation to all taxpayers.

 ¶ 31 Finally, we do not believe that *res judicata* bars an award of fees. Fees in *Kerr* were not claimed under the common fund doctrine. The taxpayers had not yet succeeded on the ultimate issue and there was no fund from which fees could be paid.

¶ 32 The judgment of the tax court is affirmed.

CONCURRING: NOEL FIDEL, Presiding Judge, and E.G. NOYES, JR., Judge.