65 P.3d 434

Clark R. KERR and Billie Sue Kerr, husband and wife, Susan Moran, Steve Allen and John Udall, individually and as representatives of the class comprised of federal employees who paid Arizona income taxes on federal retirement contributions during one or more of the years 1984 to date, Plaintiffs–Appellees, Cross Appellants,

v.

Mark J. KILLIAN, in his capacity as Director of the Arizona Department of Revenue, the Arizona Department of Revenue of the State of Arizona, Defendants–Appellants, Cross–Appellees.

State of Arizona, ex rel., the Arizona Department of Revenue, Plaintiff–Appellant, Cross–Appellee,

v.

Clark J. Kerr and Billie Sue Kerr, husband and wife, Defendants–Appellees, Cross–Appellants.

Clark J. Kerr and Billie Sue Kerr, husband and wife; and their Attorneys, Bonn, Luscher, Padden & Wilkins, Chartered and O'Neil, Cannon & Hollman, S.C., Counterclaimants–Appellees, Cross–Appellants,

v.

State of Arizona, ex rel., the Arizona Department of Revenue, Counterdefendant–Appellant, Cross–Appellee.

No. 1 CA–TX 00–0023.

Court of Appeals of Arizona, Division 1, Department T.

Aug. 28, 2001.

As Amended Feb. 27, 2003.

Bonn & Wilkins Chartered by Paul V. Bonn, Randall D. Wilkins, D. Michael Hall, Phoenix, and O'Neil, Cannon & Hollman, S.C., by Eugene O. Duffy, Milwaukee, WI, Attorneys for Plaintiffs–Appellees–Cross Appellants.

Terry Goddard, Attorney General, by Michael Worley, Assistant Attorney General, Christine Cassetta, Assistant Attorney General, Phoenix, Attorneys for Plaintiff–Appellant–Cross Appellee.

## AMENDED OPINION

PATTERSON, Presiding Judge.

¶ 1 We issued our original opinion in this appeal on August 28, 2001. *Kerr v. Killian*, 201 Ariz. 125, 32 P.3d 408 (App.2001). On August 29, 2001, our supreme court decided *Arizona Department of Revenue v. Dougherty*, 200 Ariz. 515, 29 P.3d 862 (2001). Based largely on *Dougherty*, plaintiffs-appellees/cross-appellants Clark R. Kerr and Billie Sue Kerr, Susan Moran, Steve Allen, and John Udall ("the plaintiff taxpayers") moved for reconsideration. We directed defendants-appellants/cross-appellees Arizona Department of Revenue and its director, Mark J. Killian ("ADOR") to file a response to the motion for reconsideration, and permitted the plaintiff taxpayers to file a reply. We now grant the motion for reconsideration, amend our original opinion, and file this modified opinion.

## I. BACKGROUND AND ISSUES

¶ 2 For tax years from 1991 onward, Arizona Revised Statutes ("A.R.S.") section 43–1001(2) (1998 and Supp.2002) subjects to Arizona individual income taxation those portions of federal employees' compensation that they are required to contribute toward federal employee retirement plans, while leaving untaxed the corresponding mandatory contributions of state employees to state employee retirement plans. The superior court held that A.R.S. § 43–1001(2) violated the Public Salary Tax Act of 1939, 4 U.S.C. § 111,[1] to that extent.[2] ADOR appeals.

¶ 3 The plaintiff taxpayers cross-appeal from the superior court's orders denying certification of a plaintiff class consisting of all current or former federal employees who paid Arizona income taxes on mandatory contributions to federal retirement plans during one or more years from 1985 to the present, and of an alternative, smaller class consisting of all such federal employees who also filed timely refund claims with ADOR for one or more of the years 1991 to the present. The appeal and cross-appeal present these issues:

1. Whether Arizona's income taxing scheme violates 4 U.S.C. § 111 by taxing those portions of federal employees' compensation that they are required to contribute to retirement plans, but not the corresponding portions of state employees' compensation;

2. Whether the superior court erred or abused its discretion in denying the plain-

---

1. The pertinent text of 4 U.S.C. § 111 is:

   The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

   This legislation is effectively a codification of the constitutional intergovernmental tax immunity doctrine and is interpreted according to the development of that doctrine. *See generally Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 810–15, 109 S.Ct. 1500, 1505–07, 103 L.Ed.2d 891 (1989).

2. Section 43–1001(2) has a multitude of other effects on every Arizona individual income taxpayer. None of these effects is challenged in this litigation.

tiff taxpayers' motions for class certification; and

3. Whether equal protection principles preclude ADOR from demanding compliance with an administrative claim requirement for taxpayers who initially paid the challenged taxes, while at the same time declining to pursue tax enforcement against other taxpayers who subtracted their mandatory federal retirement contributions on their Arizona returns and hence did not pay the challenged taxes.[3]

## II. FACTS AND RELEVANT PROCEDURE

¶ 4 Until former A.R.S. § 43–1022(2) was amended in 1989, 1989 Ariz. Sess. Laws Ch. 312, § 12, that statute subtracted from Arizona gross income

Contributions made to the state retirement system, the corrections officer retirement plan, the public safety personnel retirement system, the elected officials' retirement plan or a county or city retirement plan.[4]

Arizona law provided no corresponding subtraction for contributions made to federal employee retirement plans.

3. ADOR's opening brief also challenged the superior court's determination that the amended Arizona income tax return filed by plaintiffs Clark R. Kerr and Billie Sue Kerr for tax year 1984 sufficiently specified a claim for refund of Arizona income taxes they paid on plaintiff Clark Kerr's mandatory contributions to a federal employee retirement plan during that year. ADOR also challenged the court's decision to declare that the Kerrs' were entitled to an award of attorney's fees under the "common fund" theory. However, ADOR withdrew its challenge to the common fund award in its Consolidated Reply Brief and Answering Brief on Cross–Appeal. The plaintiff taxpayers' Reply Brief on Cross–Appeal also informed us that ADOR had withdrawn its contention that plaintiffs Kerr did not sufficiently claim a refund for tax year 1984, and that the plaintiff taxpayers had agreed to limit their appeal from the denial of class certification to tax years 1985 to the present. We therefore do not address these contentions.

4. The 1989 amendment eliminated the subtraction for contributions to the state retirement system, elected officials' retirement plans, and county and city retirement plans. A later amendment, 1991 Ariz. Sess. Laws Ch. 155, § 8, eliminated the remaining subtractions. For tax years 1979 through 1986, A.R.S. § 43–1022(2)

¶ 5 Since 1979, A.R.S. § 43–1001(2) has defined a resident individual's "Arizona gross income" as his/her federal adjusted gross income for the taxable year, computed under the Internal Revenue Code. *See* 1978 Ariz. Sess. Laws Ch. 213, § 2, eff. Jan. 1, 1979. Federal adjusted gross income is thus the starting point for determining an individual taxpayer's Arizona taxable income and ultimate income tax liability.

¶ 6 Effective in 1985, Arizona enacted provisions authorized by 26 U.S.C. § 414(h)[5] that permitted state and local governmental employers to "pick up" mandatory contributions that their employees would otherwise have made. Because the portion of each employee's salary that was formerly earmarked for mandatory contribution to a retirement plan was no longer considered paid to the employee and contributed to the plan thereafter, those sums were automatically excluded from the employee's federal gross income. Congress has not chosen to make this benefit available to federal employees.

¶ 7 Consequently, by dint of A.R.S. § 43–1001(2), which defines a taxpayer's Arizona gross income as his/her federal adjusted

also permitted subtraction of contributions to the judges' retirement fund. *See* 1978 Ariz. Sess. Laws Ch. 213, § 2. Effective July 1, 1986, that subtraction was repealed and the subtraction for contributions to the corrections officers' retirement fund was added in its place. *See* 1986 Ariz. Sess. Laws Ch. 325, §§ 3, 5.

5. Section 414(h) provides:

Tax treatment of certain contributions
(1) In general
Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed (A) to an employees' trust described in section 401(a), or (B) under a plan described in section 403(a), shall not be treated as having been made by the employer if it is designated as an employee contribution.
(2) Designation of units of government
For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

gross income for the tax year, the Arizona gross incomes of federal employees include all sums they are required to contribute to their respective retirement plans. At the same time, the Arizona gross incomes of state and local employees whose employing units "pick up" their required retirement plan contributions necessarily exclude the amount of those contributions.[6] *See generally Kerr v. Waddell,* 183 Ariz. 1, 12–13, 899 P.2d 162, 173–74 (App.1994) (*"Kerr I "*), *vacated on other grounds,* 185 Ariz. 457, 916 P.2d 1173 (App.1996) (*"Kerr II "*).

¶ 8 In 1989, the plaintiff taxpayers now before us brought an action, Tax Court Cause No. 89–01153, challenging the differential taxation effects of A.R.S. § 43–1001(2) and former A.R.S. § 43–1022(2). In *Kerr I,* this court held that their state-law claims for refunds were barred by their failure to exhaust their administrative remedies before bringing the action, but that their claims for declaratory and injunctive relief under 42 U.S.C. § 1983 could proceed. 183 Ariz. at 8–11, 899 P.2d at 169–72. *Kerr I* also held that former §§ 43–1022(2) and 43–1001(2), as applied to state and federal employees, violated 4 U.S.C. § 111. 183 Ariz. at 14–17, 899 P.2d at 175–78.

¶ 9 On petition for review our supreme court remanded for further consideration in light of *National Private Truck Council, Inc. v. Oklahoma Tax Commission,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). On remand this court held that Arizona's administrative process for challenging the denial of tax refunds was an adequate state remedy within *National Private Truck Council,* and the plaintiffs' claims under 42 U.S.C. § 1983 were barred because they had failed to resort to and exhaust those remedies. *Kerr II,* 185 Ariz. at 464–67, 916 P.2d at 1180–83. We remanded the action to the tax court with directions to dismiss it in its entirety. *Id.*

¶ 10 Simultaneously with the filing of their 1989 action in the tax court, the plaintiff taxpayers filed corresponding administrative refund claims with ADOR on behalf of themselves and all other similarly situated federal employees. *Kerr v. Killian,* 197 Ariz. 213, 215, ¶ 6, 3 P.3d 1133, 1135 (App.2000) (*"Kerr III "*). In 1993, a hearing officer for ADOR determined that ADOR had no legal authority to rule on the legality of A.R.S. § 43–1001(2) and former A.R.S. section 43–1022(2), or to recognize a class refund claim. *Id.*

¶ 11 In 1994, during the pendency of *Kerr I* in this court, the Arizona Board of Tax Appeals heard the plaintiff taxpayers' administrative appeal from the ADOR hearing officer's adverse ruling. The matter remained under advisement with the Board until 1997, the year following the dismissal of the plaintiff taxpayers' first action pursuant to *Kerr II. Kerr III,* 197 Ariz. at 215, ¶ 7, 3 P.3d at 1135. The Board ruled that the plaintiff taxpayers were entitled to refunds for 1985 through 1990 because former A.R.S. § 43–1022(2) violated the intergovernmental tax immunity doctrine codified in 4 U.S.C. § 111. At the same time, the Board determined that A.R.S. § 43–1001(2) did not violate 4 U.S.C. § 111 and that no refunds for tax years after 1990 would be awarded. The Board also agreed with the ADOR hearing officer that neither ADOR nor the Board could entertain a class refund claim.

¶ 12 The plaintiff taxpayers and ADOR commenced the instant actions in April and May 1997 to appeal the Board's ruling. The plaintiff taxpayers alleged that they had "filed and pursued through the administrative process, a timely administrative class claim on their behalf and on behalf of all federal employees similarly situated." ADOR's answer admitted this allegation, but denied "that Plaintiffs were entitled to file or pursue a claim on behalf of anyone other than themselves."

¶ 13 In mid–1997, the Governor of Arizona directed ADOR "to make refunds for the tax years 1985 through 1990 to all taxpayers who had filed timely refund claims, whether they were parties to the administrative action or

---

6. The fund managers of the Public Safety Personnel Retirement System and the Corrections Officer Retirement Plan have the power to authorize state and local employers to "pick up" the retirement contributions of members of those plans.

A.R.S. § 38–843.01 through 38–843.04 (Supp. 2000); A.R.S. § 38–891 (1996). They did so June 30, 2000, during the pendency of this appeal.

not." *Kerr III*, 197 Ariz. at 216, ¶ 8, 3 P.3d at 1136. *See* ADOR Arizona Individual Income Tax Ruling ITR 98–1. *at* http://www.revenue.state.az.us/rulings/itr98–1.htm. In June 1998, the tax court entered judgment under the common fund doctrine awarding the plaintiff taxpayers' attorneys 20% of each such refund for their fees. We affirmed that judgment. *Kerr III*, 197 Ariz. at 217–20, ¶¶ 19–32, 3 P.3d at 1137–40.

¶ 14 During the pendency of the appeal in *Kerr III*, the tax court denied plaintiff taxpayers' motion to certify a class consisting of all current and former federal employees who paid Arizona income taxes on compensation paid as contributions to United States Government retirement plans from 1984 to the present who have not received refunds of such taxes. Following the analysis of our opinion in *Kerr I*, vacated in *Kerr II*, the court held that the application of A.R.S. § 43–1001(2) violated 4 U.S.C. § 111 to the extent it caused discriminatory state taxation of federal employees as compared to state and local governmental employees. The court also denied the plaintiff taxpayers' alternative motion to certify a class of all federal employees who filed timely refund claims for one or more years from 1991 to the present.

¶ 15 ADOR appeals, and the plaintiff taxpayers cross-appeal. We have jurisdiction under A.R.S. section 12 2101(B) (1994).

## III. ANALYSIS

### A. Differential Taxation of Retirement Plan Contributions

#### 1. Standard of Review

¶ 16 On appeal from summary judgment the trial court's rulings on questions of law are reviewed *de novo*. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

#### 2. A.R.S. § 43–1001(2) and 4 U.S.C. § 111

¶ 17 Under A.R.S. § 43–1001(2), the Arizona gross incomes of state and local employees, like those of federal employees and all other Arizona individual income taxpayers, are deemed to be the same amounts that are calculated as their adjusted gross incomes for the purpose of federal income taxation. As permitted by 26 U.S.C. § 414(h)(2), Arizona has adopted legislation enabling all state and local governmental employment units to elect to "pick up" their employees' mandatory retirement plan contributions. Those contributions are therefore excluded from the federal adjusted gross (Arizona gross) incomes of all employees of electing state and local governmental employment units. A.R.S. § 43–1001(2). Congress, however, has not authorized the United States Government to "pick up" federal employees' mandatory contributions to their retirement plans. The effect of A.R.S. § 43–1001(2) on federal employees is to sweep all such contributions into their Arizona gross incomes.

¶ 18 Arizona's individual income tax statutes make no adjustment to correct this differential Arizona income taxation of federal employees and state and local employees. There is no provision that adds back the sums representing state and local government employees' mandatory retirement contributions in the process of calculating their Arizona taxable incomes. They likewise contain no provision that subtracts the sums representing federal employees' mandatory retirement contributions in that same process. Through the 1990s until today, the practical result of this Arizona statutory scheme has been to tax the mandatory retirement plan contributions of all Arizona taxpayers who are federal employees, while sheltering from taxation the mandatory retirement plan contributions of all Arizona taxpayers who are employees of electing state and local governmental employment units.

¶ 19 In *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 816, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the Supreme Court invalidated certain Michigan income taxing provisions that taxed retirement benefits paid by the United States Government while exempting retirement benefits paid by state and local governmental entities. The Court determined that the Michigan taxing scheme violated 4 U.S.C. § 111 and the intergovernmental tax immunity doctrine. The *Davis*

court summarized the required mode of analysis as follows:

> Under our precedents, "[t]he imposition of a heavier tax burden on [those who deal with one sovereign] than is imposed on [those who deal with the other] must be justified by significant differences between the two classes." *Phillips Chemical Co. v. Dumas Independent School Dist.*, 361 U.S. [376], at 383 [80 S.Ct. 474, 4 L.Ed.2d 384] [1960]. In determining whether this standard of justification has been met, it is inappropriate to rely solely on the mode of analysis developed in our equal protection cases. We have previously observed that "our decisions in [the equal protection] field are not necessarily controlling where problems of intergovernmental tax immunity are involved," because "the Government's interests must be weighed in the balance." *Id.*, at 385 [80 S.Ct. 474]. Instead, the relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, "significant differences between the two classes." *Id.*, at 383–85 [80 S.Ct. 474].

489 U.S. at 816–17, 109 S.Ct. 1500. *Accord Barker v. Kansas*, 503 U.S. 594, 598, 112 S.Ct. 1619, 118 L.Ed.2d 243 (1992). The Court later held that *Davis* was to be applied retroactively. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 98, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

¶ 20 In his dissenting opinion in *Davis*, Justice Stevens argued that Michigan's challenged tax was nondiscriminatory and thus constitutional because it drew no distinction "between the federal employees or retirees and the vast majority of voters in the State." 489 U.S. at 823, 109 S.Ct. 1500. In footnote four to its opinion, the *Davis* Court responded:

> In *Phillips Chemical Co.*, however, we faced that precise situation: an equal tax burden was imposed on lessees of private, tax-exempt property and lessees of federal property, while lessees of state property

paid a lesser tax, or in some circumstances none at all. Although we concluded that "[u]nder these circumstances, there appears to be no discrimination between the Government's lessees and lessees of private property," 361 U.S. at 381 [80 S.Ct. 474], we nonetheless invalidated the State's tax. This result is consistent with the underlying rationale for the doctrine of intergovernmental tax immunity. The danger that a State is engaging in impermissible discrimination against the Federal Government is greatest when the State acts to benefit itself and those in privity with it. As we observed in *Phillips Chemical Co.*, "it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself." *Id.* at 385 [80 S.Ct. 474].

489 U.S. 803, 815 n. 4, 109 S.Ct. 1500, 103 L.Ed.2d 891. *See also Barker*, (invalidating Kansas provisions taxing federal military retirement benefits while exempting state and local governmental employee retirement benefits on ground that no significant differences existed between the two retiree classes; ignoring Justice Stevens's attack on *Davis* in concurring opinion and his statement that: "A state tax burden that is shared equally by federal retirees and the vast majority of the State's citizens does not discriminate against those retirees.").

¶ 21 In our first opinion in the instant appeal, *Kerr v. Killian*, 201 Ariz. 125, 32 P.3d 408 (App.2001) ("*Kerr IV*"), we criticized as "incomplete and ultimately incorrect" this court's determination in *Kerr I* that the differential taxation of federal employees' mandatory retirement contributions and those of state and local governmental employees resulted from Arizona and not federal legislative action and therefore violated the intergovernmental tax immunity doctrine. *Kerr IV*, 201 Ariz. at 130, ¶ 18, 32 P.3d at 413.[7] Relying on *Davis* and *Jefferson County v.*

---

**7.** We elaborated:

> The *Kerr I* court focused on whether the differing Arizona tax treatment of state and local governmental employees as compared to that of federal employees actually resulted from the operation of Arizona income tax stat-

utes. *Kerr I* accordingly never directly addressed the more fundamental question of whether the differential Arizona tax treatment was actually "based on" the federal or state source of the pay or compensation.

201 Ariz. at 130, ¶ 18, 32 P.3d at 413.

*Acker,* 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999), *Kerr IV* determined instead that the differential taxation of federal and state/local employees' mandatory retirement contributions did not violate the intergovernmental tax immunity doctrine codified as 4 U.S.C. § 111. We reasoned:

> Section 43–1001(2) disadvantages **all** Arizona resident individual taxpayers, private or governmental, who make mandatory retirement plan contributions that are not "picked up" or paid directly by their employers, over **all** Arizona resident individual taxpayers whose private or governmental employers pick up or directly pay their mandatory retirement contributions. Either of these groups may contain both state or local government employees and federal employees. The Arizona taxing scheme does not single out all or any subgroup of state or local governmental employees for advantageous treatment as against all others. It likewise does not single out all or any subgroup of federal employees for disadvantageous treatment as against all others. Under those circumstances, despite the fact that some state and local employees are taxed more favorably than federal employees and other Arizona income taxpayers by virtue of A.R.S. section 43–1001(2), we conclude as a matter of law that Arizona law does not discriminate against the plaintiff taxpayers or their putative class "because of the source of [their] pay or compensation" in violation of 4 U.S.C. § 111.

201 Ariz. at 131, ¶ 22, 32 P.3d at 414.

¶ 22 With the benefit of the parties' briefing on the plaintiff taxpayers' motion for reconsideration, we now recognize that we mistakenly based this analysis in part on a proposition of fact that the record does not support. Neither our own research nor the record supports the proposition that a private employer may choose to "pick up" its employees' mandatory contributions [8] and thus exclude them from the employees' federal gross incomes. Federal law accords that privilege only to state and local government employers. 26 U.S.C. § 414(h).

¶ 23 More importantly, the overarching principle that drove our analysis in *Kerr IV* sprang from a narrow, mistaken application of the literal language of 4 U.S.C. § 111 without appropriate regard for the United States Supreme Court case law that both underpins and interprets that statute. Briefly stated, *Kerr IV* failed to recognize that under *Davis* and its progeny, the relevant inquiry is not into the rationale or the statutory mechanism under which a state differentially taxes federal employees and state/local government employees, or the overall effect of the state taxing scheme on other Arizona taxpayers in comparison to such employees, or even the question whether the state taxing scheme appears targeted toward benefitting state/local employees or disadvantaging federal employees in comparison to all other taxpayers. The relevant inquiry is instead whether the fact of differential state tax treatment of federal employees and state/local government employees is directly related to and justified by "significant differences" between those two classes. *Davis,* 489 U.S. at 815–16, 109 S.Ct. 1500.[9]

¶ 24 There is no question on this record that from 1990 to the present the Arizona taxing scheme has (1) required federal employees who reside in Arizona to pay Arizona

---

**8.** A substantial question exists concerning whether a private employer may adopt a mandatory retirement plan to which its employees must make specified employee contributions. We need not resolve that question for the purpose of our analysis here, and merely assume hypothetically that this is an option legally available to private employers.

**9.** We also recognize that our reliance on *Acker* was misplaced. We cited that case as one in which the Supreme Court identified circumstances in which the intergovernmental tax immunity doctrine codified as 4 U.S.C. § 111 did not apply. We were correct in that assessment.

We nevertheless failed to recognize that, unlike the situation here, the county license tax at issue in *Acker* had not been challenged as one that illegally imposed differential taxation on federal and state employees, but rather one that imposed an illegal direct tax on federal instrumentalities. It was in that context that the Court sustained the tax as one that did not discriminate against federal officeholders because of the federal "source" of their compensation. Contrary to our implicit conclusion in *Kerr IV*, *Acker* does not change the *Davis* analysis as applied in the instant case.

individual income taxes on those portions of their employment compensation that they contribute to the federal retirement plans in which they are required to participate, while at the same time (2) effectively excusing most state and local governmental employees from paying such taxes on their own mandatory contributions to their corresponding state or local governmental retirement plans. Under *Davis* and its progeny, the only pertinent question is whether significant differences between these two classes exist that are directly related to and justify this differential treatment.

¶ 25 The principal focus of ADOR's opening and reply briefs on appeal was not on that question at all. Similar to its position in *Kerr I*, ADOR's principal thesis is that the differential taxation challenged in this case is not based on the "source" of the compensation in question, but rather on the federal tax status of the retirement plans to which federal, state, and local employees happen to be contributing. ADOR argues:

> The Arizona tax scheme does not discriminate based on the source of the income merely because it gives effect to choices made by the employer. The tax exclusion is not based on the source of the income, but on the qualification of the plan by the employer. All similarly situated employees are treated in the same manner. Any employee whose employer has a qualified plan that allows pre-tax contributions is treated in the same manner under Arizona tax law. This includes employees of governmental units and employees of private business entities. If a private employer chose to act as does the federal employer and not provide a pre-tax plan to its employees, the private employee contributions would similarly not be excluded from income. There is no discrimination.

¶ 26 For a number of reasons, we cannot agree with this analysis. First, ADOR's position is in essence that it is the particular federal, state, local, and private employers' choices concerning what kind of retirement plan to offer, and not the provisions of Arizona law, that produce the differential Arizona income taxation of federal employees' and state/local employees' mandatory contri-

butions to retirement plans. This is essentially the same argument that we correctly rejected in *Kerr I* as follows:

> Both the tax court and the defendants err in relying upon "the source of the pay or compensation" to extricate Arizona's scheme for taxation of federal, state, and local retirement contributions from the prohibited category of discrimination. The thrust of defendants' reasoning is found in their statement that "[t]he only obstacle to the exclusion of federal plan contributions [from Arizona income taxation] is the federal employer, who has refrained from acting to 'pick up' contributions." Their implicit major premise, which is incorrect, is that Arizona had no choice other than to adopt federal adjusted gross income without modification as part of the state income tax scheme.
>
> Contrary to the tax court's ruling and [ADOR's] reasoning, however, it was ultimately Arizona legislative action that imposed the discriminatory tax scheme. In other words, it was not federal legislative action, but state legislative action that caused state and local retirement contributions to be exempted from Arizona income taxation while federal retirement contributions were not. No provision of law to which we are cited required Arizona to adopt federal adjusted gross income in determining Arizona taxable income.
>
> Further, as we observe above, the Arizona income tax scheme uses federal adjusted gross income only as its starting point. In arriving at Arizona adjusted gross income, some sixteen items of income are added to Arizona gross income, and twenty are subtracted from it. *See* A.R.S. §§ 43–1021 (Supp.1993) (additions to Arizona gross income); A.R.S. § 43–1022 (Supp.1993) (subtractions from Arizona gross income). For example, Arizona adds to gross income a taxpayer's interest income from non-Arizona political subdivisions, which the [Internal Revenue Code] excludes from federal income taxation. *See* A.R.S. § 43–1021(4). Similarly, Arizona subtracts from Arizona gross income all interest received on United States government obligations, and portions of social

security benefits and railroad retirement benefits, which the federal government can tax but states cannot. *See Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983); 31 U.S.C. § 3124(a) (1988); 45 U.S.C. § 231m(a) (1988); A.R.S. §§ 43–1022(6), (17) (Supp. 1993).

. . . Whatever the treatment accorded by federal law to federal and state retirement plan contributions, Arizona was not compelled to discriminate against federal employees.

*Kerr I*, 183 Ariz. at 15, 899 P.2d at 177. *Cf. Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev.*, 505 U.S. 71, 82, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992) (adoption of federal tax system in whole or in part does not shield statute from constitutional scrutiny).

¶ 27 More fundamentally, ADOR's analysis fails to recognize that under *Davis*, the purpose of the intergovernmental tax immunity doctrine is to protect the interests of the United States Government, and the government's interests must therefore be "weighed in the balance." *Davis*, 489 U.S. at 816, 109 S.Ct. 1500. The United States Congress has determined that federal entities are not to be accorded the choice to "pick up" their employees' mandatory retirement contributions and thereby exclude them from the employees' federal gross incomes. 26 U.S.C. § 414(h). As we understand *Davis* and the Supremacy Clause of Article VI of the United States Constitution, states must accept existing federal law as a "given." They cannot, as ADOR insinuates, simply treat Congressional policy as the mere equivalent of a private employer's choice as to what kind of retirement plan to offer its employees among those available under the law. Congressional policy as embodied by 26 U.S.C. § 414(h) is itself the law, and binds the states.

¶ 28 Equally important, ADOR's analysis also fails to recognize that under *Davis* the relevant inquiry is the existence *vel non* of significant differences between state/local employees and federal employees that directly relate to and justify Arizona's differential taxation of their mandatory retirement contributions. The "significant difference" between federal employees and state/local employees on which ADOR relies to support the existing Arizona tax scheme is Congress' choice to deny federal government employees the opportunity to exclude their mandatory retirement contributions from federal income taxation. But ADOR offers nothing that remotely tends to "justify" Arizona's own inertial choice to refrain from equalizing the burden of Arizona income taxation on the mandatory retirement contributions of federal employees and state/local employees. ADOR's analysis offers 26 U.S.C. § 414(h) merely as an explanation for the differential tax treatment, not as a justification for it.[10] This is wholly insufficient to pass muster under *Davis* and its progeny.

¶ 29 In reality, there are no significant differences between the class of federal employees and the class of state and local employees as regards Arizona income taxation in this case. Members of both classes are required to contribute portions of their employment compensation to government-mandated retirement plans in which they are involuntary members as a legal consequence of their employment status. Under federal law, state and local governmental employers may and do elect to "pick up" their employees' mandatory retirement contributions and thus exclude the amounts of those contributions from their employees' federal gross incomes. Federal law does not permit federal government employing units to "pick up" their employees' mandatory retirement contributions. As a result, those amounts are included in federal employees' federal gross incomes along with the rest of their employment compensation.

¶ 30 Against that backdrop, Arizona has chosen to design its individual income taxing scheme in a way that includes federal employees' mandatory retirement contributions in their Arizona gross incomes, but excludes

---

10. As ADOR argues in its opening brief,

Arizona law makes the tax treatment of employees dependent upon choice made by the retirement plan in which the employees partic-

ipate. The federal employer has made a choice, and Arizona should not be required to twist its tax law to remove the tax consequences of that choice.

from Arizona gross income the corresponding mandatory retirement contributions of state and local employees. Congress' choice to discriminate against federal employees and in favor of state and local employees is not a significant difference in the characteristics of the two classes with respect to income taxation by the State of Arizona. It merely represents a difference in the treatment of the two groups under federal law for the purpose of federal income taxation.

¶ 31 As we have said, Arizona has been free all along to adjust its statutes to equalize the treatment of the two groups for Arizona income tax purposes. It has chosen not to do so. It thereby violated the intergovernmental tax immunity doctrine as codified in 4 U.S.C. § 111 and interpreted by *Davis* and the cases following it.

¶ 32 Our reliance on *Cooper v. Commissioner of Revenue*, 421 Mass. 557, 658 N.E.2d 963 (1995), and *Witte v. Director of Revenue*, 829 S.W.2d 436 (Mo.1992), in *Kerr IV* in support of the contrary conclusion was misplaced. In *Cooper*, a Massachusetts statute exempted from state taxation all retirement benefits paid by annuity, pension, endowment, or retirement plans of the United States government, or state or local governmental employers, to which the recipient employee had contributed. Under this statute, any state, local or federal employee who had not contributed a portion of his/her salary to his/her retirement fund was required to pay state income taxes on his/her retirement benefits.

¶ 33 The plaintiff taxpayers in *Cooper* were military retirees whose retirement plans were funded entirely by the federal government. They claimed refunds of Massachusetts income taxes that they paid on their military retirement benefits. The Appellate Tax Board dismissed their claims.

¶ 34 The Supreme Judicial Court affirmed. The court reasoned:

Massachusetts tax law distinguishes between contributory and noncontributory retirement plans, not between State and Federal retirees. "The determining factor for the Massachusetts exemption is whether the retirement fund is a 'contributory fund to which the employee has contribut-

ed.'" Technical Information Release (TIR) 89–6 (May 10, 1989), 2 Official Mass-Tax Guide at 369 (West 1995). "Any Federal retirement income is exempt from Massachusetts tax if the system is contributory and the employee actually contributed," *id.*, and, on the other hand, "[a] noncontributory government pension, received by a retired employee of [a political subdivision of the Commonwealth] ... is includible [sic] in the Massachusetts gross income of the employee ... in the taxable year in which the pension is paid." Letter Ruling 81–51 (June 11, 1981), *supra* at 576. In sum, the statutory provisions treat retirement benefits paid by the Commonwealth and the Federal government in precisely the same way.

658 N.E.2d at 964.

¶ 35 In contrast, the "practical operation" of Arizona's taxing scheme, *see Phillips Chemical Company*, has required every federal employee who resides in Arizona to pay Arizona income taxes on his/her mandatory contributions to federal retirement plans, while allowing the mandatory retirement contributions of state and local employees to escape such taxation essentially by default. Unlike the situation in this case, the state taxing scheme in *Cooper* on its face treated both state and federal employees in the same way. In contrast, because the "pick up" option in 26 U.S.C. § 414(h) is extended to state and local governmental employers only, Arizona's taxing scheme results in a huge, unmistakable disparity in state income taxation as between federal employees and state/local employees. The *Cooper* court held that the provisions before it did not discriminate against federal retirees "either facially or in effect." 658 N.E.2d at 966. The effect of the Arizona taxing scheme in question here stands in stark contrast.

¶ 36 *Witte* is questionable authority. There, the court held that the plaintiff taxpayer had failed to carry his burden of proving that a Missouri statute allowing deduction of mandatory FICA contributions but not of federal Civil Service Retirement System contributions violated the intergovernmental tax immunity doctrine. The court

stated: "The appellants have not shown the existence of a line of demarcation between those who benefit from § 143.141 (allowing state deduction of FICA, railroad retirement, and self-employment taxes paid to federal government) and those who do not, based on a classification scheme that is, indeed, 'intergovernmental' ". 829 S.W.2d at 439 n. 4. Upon reconsideration, we think the dissent by Senior Judge Blackmar, who would have invalidated the Missouri taxing scheme on the ground that it discriminated against one class of federal retirees and in favor of substantially all other taxpayers is the better reasoned opinion.

¶ 37 For the aforementioned reasons, we conclude that the superior court correctly determined that A.R.S. § 43–1001(2) and the Arizona resident individual income taxing scheme violated 4 U.S.C. § 111 and the intergovernmental tax immunity doctrine as applied to the plaintiff taxpayers.

## B. Denial of Class Certification

¶ 38 In June 1997, two months after the plaintiff taxpayers commenced this litigation, the Governor of Arizona directed ADOR to make refunds for tax years 1985 through 1990 to all taxpayers who had filed timely refund claims, whether or not they had been parties to any administrative proceedings on those claims. *Kerr III*, 197 Ariz. at 216, ¶ 8, 3 P.3d at 1136. It is undisputed that ADOR took action to implement that order, though disputes arose concerning ADOR's refunding decisions in particular claimants' cases.

¶ 39 The plaintiff taxpayers later moved unsuccessfully to certify a class consisting of all current and former federal employees who paid Arizona income taxes on contributions they made to United States Government retirement plans from 1984 to the present who had not been paid refunds of such taxes. The relevant class would have encompassed all current or former federal employees who paid Arizona income taxes on their mandatory contributions to federal retirement plans and either (1) filed a refund claim that ADOR denied, or (2) filed no refund claim at all. This putative class would have included all similarly situated federal employees who had paid Arizona income taxes on their mandatory retirement contributions during tax years 1984 through 1990, the period during which former A.R.S. § 43–1022(2) allowed a subtraction from Arizona gross income for contributions to most state and local employees' retirement plans. It would also have comprehended all similarly situated federal employees who paid Arizona income taxes on their mandatory contributions to federal retirement plans in tax years after 1990 under A.R.S. § 43–1001(2). The tax court denied certification of any such class. The plaintiff taxpayers cross-appealed from the denial of class certification.

¶ 40 In affirming the tax court's denial of class certification pertaining to tax years 1985 [11] through 1990, our prior opinion elected to follow the holding of *Arizona Department of Revenue v. Dougherty*, 198 Ariz. 1, 6 P.3d 306 (App.2000) ("*Ladewig I* ") (review granted Jan. 9, 2001), that tax refunds may be sought through the filing of a class action in the tax court, but that membership in any taxpayer class is restricted to those who have exhausted applicable statutory administrative remedies before the ADOR and the Board of Tax Appeals. *Kerr IV*, 201 Ariz. at 133, ¶ 35, 32 P.3d at 416.

¶ 41 The day after we filed our prior opinion, the Arizona Supreme Court filed its opinion on review vacating *Ladewig I. Ariz. Dep't of Revenue v. Dougherty*, 200 Ariz. 515, 29 P.3d 862 (2001) ("*Ladewig II* "). *Ladewig II* agreed with this court's determination that a tax refund action may be brought as a class action, but found no legal or policy reason to restrict a tax refund plaintiff class to taxpayers who have actually resorted to and exhausted their administrative remedies. 200 Ariz. at 522, ¶ 24, 29 P.3d at 869. *Ladewig II* held that an administrative refund claim may be filed on behalf of a taxpayer class, and that the filing of such a claim will toll the applicable statute of limitations for all other putative class members. 200 Ariz. at 522, ¶ 25, 29 P.3d at 869.

¶ 42 The legal theory on which the plaintiff taxpayers based their claim for refunds for tax years after 1990 was that taxation of

11. See footnote 3, above.

their mandatory contributions to federal retirement plans pursuant to A.R.S. §43–1001(2), without any statutory adjustment to equalize the treatment of federal employees as compared to state and local employees, violated the intergovernmental tax immunity doctrine codified as 4 U.S.C. § 111. Our prior opinion rejected this theory and thus determined that plaintiff taxpayers' cross-appeal was moot to the extent it challenged the tax court's orders denying their motion to certify a plaintiff class for tax years after 1990.

¶ 43 We have now reconsidered and reversed our prior determination of the intergovernmental tax immunity doctrine issue. The plaintiff taxpayers' bid for class certification for those tax years is not moot.

¶ 44 Our prior opinion also determined that the tax court had not abused its discretion in denying the plaintiff taxpayers' motion for class certification as to tax years 1985 through 1990. We determined:

¶ 34 The trial court could reasonably have concluded that certification of a class of those whose refund claims had been denied would have not been "superior to other available methods for the fair and efficient adjudication of the controversy." Ariz. R. Civ. P. 23(b)(3). Each member of the prospective class would already have invoked the process contemplated by Arizona Individual Income Tax Ruling ITR 98–1 and would have been entitled to appeal the denial of their claims administratively and judicially. See A.R.S. §§ 42–1101, –1104, –1106, –1118, –1119, –1122, –1251 through –1254 (1999 and Supp.2000). The trial court might understandably have been reluctant to overlay a second, redundant level of judicial supervision on the individual claims payment process that ADOR had already undertaken for tax years 1985 through 1990.

¶ 35 As we have mentioned, the putative class would also have encompassed refund 'claimants' who had filed no written refund claims with ADOR in any form. In Arizona Department of Revenue v. Dougherty (Ladewig), 198 Ariz. 1, 6 P.3d 306 (App. 2000), review granted January 9, 2001, this court held that a tax refund action may be

brought and maintained as a class action, but that membership in the putative class is restricted to those taxpayers who have exhausted applicable statutory administrative remedies before the Department of Revenue and the Board of Tax Appeals. The Arizona Supreme Court's opinion on that issue will be controlling. We do not propose to revisit the issue while it is under advisement in that court. We elect instead to follow our own opinion in Ladewig.

¶ 36 . . . a person who files no refund claim of any description cannot be said to have complied with the exhaustion requirement no matter how loosely it may be interpreted. The trial court was within its discretion in declining to certify a class consisting of current or former federal employees seeking refunds for years between 1985 through 1990 for which they had failed to file any form of administrative refund claim.

201 Ariz. at 133, 32 P.3d at 416.

¶ 45 Ladewig II has vacated Ladewig I. In opposing reconsideration of our prior opinion in the instant case, ADOR argues that the tax court's determination to deny class certification may nevertheless be sustained on appeal on the alternative grounds presented to it. These include ADOR's contention that the plaintiff taxpayers' representation of the putative class would not be adequate; that the plaintiff taxpayers' claims are not typical of those of the putative class; and that the putative class is not sufficiently numerous to render class certification appropriate. See Ariz. R. Civ. P. 23(a). We disagree.

¶ 46 The pre-Ladewig II uncertainty over the availability of administrative class claims in tax refund cases must necessarily have restricted the tax court's view of the potentially permissible scope of the taxpayer class and thereby affected its consideration of all the class certification criteria provided by Rule 23. Ladewig II has now eliminated that uncertainty. Because the question whether to certify a class under the Rule 23 criteria is committed to the tax court's sound discretion, Godbey v. Roosevelt School District No. 66 of Maricopa County, 131 Ariz. 13, 16, 638 P.2d 235, 238 (App.1981), we think it better to allow the tax court to have a

fresh look at the plaintiff taxpayers' motion for class certification on remand.

### C. ADOR Enforcement of Claim/Exhaustion Requirements

¶ 47 The plaintiff taxpayers contend that equal protection principles bar ADOR's argument that only persons who filed timely administrative claims may receive refunds. *Ladewig II* has mooted this contention. We need not address it.

## IV. CONCLUSION

¶ 48 Arizona's income taxing scheme applicable to tax years 1991 to the present violates the intergovernmental tax immunity doctrine as codified in 4 U.S.C. § 111 to the extent it taxes federal employees' mandatory contributions to retirement plans, but not those of employees of state and local governmental units that have elected to "pick up" such contributions pursuant to 26 U.S.C. § 414(h). *Ladewig II* requires reconsideration of the plaintiff taxpayers' motion for class certification in the tax court on remand. The judgment and orders on appeal are affirmed in part and reversed and remanded in part.

CONCURRING: WILLIAM F. GARBARINO, Judge and JOHN C. GEMMILL, Judge.