SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| CLARK J. KERR and BILLIE SUE KERR, husband and wife, SUSAN MORAN, STEVE ALLEN and JOHN UDALL, individually and as representatives of the class comprised of federal employees who paid Arizona income taxes on federal retirement contributions during one or more of the years 1984 to date, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs-Appellees, Cross-Appellants, | ) ) ) |
| v. | ) ) |
| MARK J. KILLIAN, in his capacity as Director of the Arizona Department of Revenue, the ARIZONA DEPARTMENT OF REVENUE OF THE STATE OF ARIZONA, | ) ) ) ) ) ) |
| Defendants-Appellants, Cross-Appellees. | ) ) ) |

Arizona Supreme Court
No. CV-03-0110-PR

Court of Appeals
Division One
No. 1 CA-TX 00-0023

Arizona Tax Court
Nos. TX 97-00119
     TX 97-00131
     TX 97-00150

**O P I N I O N**

_____

STATE OF ARIZONA ex rel., the
ARIZONA DEPARTMENT OF REVENUE,

           Plaintiff-Appellant,
              Cross-Appellee,

           v.

CLARK J. KERR and BILLIE SUE
KERR, husband and wife,

           Defendants-Appellees,
              Cross-Appellants.
_____

CLARK J. KERR and BILLIE SUE
KERR, husband and wife; and
their ATTORNEYS, BONN, LUSCHER,

PADDEN & WILKINS, CHARTERED and    )
O'NEIL, CANNON & HOLLMAN, S.C.,    )
                                   )
     Counterclaimants-Appellees, )
            Cross-Appellants, )
                                   )
            v.                     )
                                   )
STATE OF ARIZONA ex rel., the      )
ARIZONA DEPARTMENT OF REVENUE,     )
                                   )
     Counterdefendant-Appellant, )
            Cross-Appellee. )
                                   )
_____)

Appeal from the Superior Court of Maricopa County
Arizona Tax Court
The Honorable William J. Schafer, III, Judge
The Honorable Susan R. Bolton, Judge

**REVERSED IN PART AND REMANDED**

---

Opinion of the Court of Appeals, Division One
204 Ariz. 485, 65 P.3d 434

**VACATED IN PART**

---

BONN & WILKINS, CHARTERED                                    Phoenix
     By:  Paul V. Bonn
          Randall D. Wilkins
          D. Michael Hall
          Brian A. Luscher

and

O'NEIL, CANNON & HOLLMAN, S.C.                        Milwaukee, WI
     By:  Eugene O. Duffy
Attorneys for Appellees, Cross-Appellants

TERRY GODDARD, ATTORNEY GENERAL                              Phoenix
     By:  Michael P. Worley
Attorneys for Appellant, Cross-Appellee

---

**H U R W I T Z,** Justice

¶1      The question in this case is whether Arizona's income tax scheme violates the intergovernmental tax immunity doctrine because it effectively subjects federal employees' mandatory retirement contributions to current taxation, while deferring taxation of similar contributions by state and local employees. We conclude that the state income tax code does not discriminate against federal employees because of the source of their pay or compensation, and thus does not violate the intergovernmental tax immunity doctrine, codified in 4 U.S.C. § 111(a) (2000).

## I.

¶2      This case has a long and complicated procedural and substantive history.  This litigation commenced in 1989 and has been the subject of five prior reported appellate opinions.[1]  We begin with a review of the "long strange trip"[2] that brought this case here.

---

[1]     *See Kerr v. Killian*, 204 Ariz. 485, 65 P.3d 434 (App. 2003) ("*Kerr V*"); *Kerr v. Killian*, 201 Ariz. 125, 32 P.3d 408 (App. 2001) ("*Kerr IV*"); *Kerr v. Killian*, 197 Ariz. 213, 3 P.3d 1133 (App. 2000) ("*Kerr III*"); *Kerr v. Waddell*, 185 Ariz. 457, 916 P.2d 1173 (App. 1996) ("*Kerr II*"); *Kerr v. Waddell*, 183 Ariz. 1, 899 P.2d 162 (App. 1994) ("*Kerr I*").  We refer in this opinion to these previous opinions by the parenthetical shorthands above.

[2]     Grateful Dead, *Truckin', on American Beauty* (Warner Bros. 1970).

3

## A.    The Federal Tax Code

¶3      This controversy has its origins in several arcane provisions of the federal tax code.  Under various sections of the Internal Revenue Code, including I.R.C. §§ 401 and 403, governmental employers may choose to establish "contributory" retirement plans.  A typical plan requires employees to contribute a portion of their income to the plan (the "employee's contribution") and the employer then contributes additional funds (the "employer's contribution").

¶4      In the abstract, both the employee's and employer's contributions would seem to be current taxable income to the employee; the former comes out of the employee's salary, while the latter is plainly a benefit conferred by the employer as a result of the employee's labor.  *See generally* I.R.C. § 61 (defining gross income as "all income from whatever source derived").  But, in what has aptly been termed "one example of the dominance of form over substance in the tax code," *Howell v. United States*, 775 F.2d 887, 887 (7th Cir. 1985), federal tax law distinguishes between the employee's and the employer's contributions.  An employer's contribution to a retirement plan "qualified" under I.R.C. §§ 401(a) and 403(a) is not treated as taxable income for the employee until the plan pays benefits to the employee.  *See Howell*, 775 F.2d at 887.  An employee's contribution to a retirement plan, however, is generally treated

4

as current taxable income to the employee, even if the employee is mandated to make the contributions out of his current pay. *See generally United States v. Basye*, 410 U.S. 441, 449-50 (1973) (treating contributions to retirement plan as "anticipatory assignments of income"). The employee is not taxed, however, on the eventual distributions from the plan corresponding to his taxable contributions. *See* I.R.C. § 72.

¶5        In 1974, Congress complicated the situation further by enacting Pub. L. No. 93-406, 88 Stat. 825 (1974), codified at I.R.C. § 414(h)(2). Section 414(h)(2) provides that if a state or local governmental employer "picks up" employee contributions to a plan qualified under §§ 401(a) or 403(a), "the contributions so picked up shall be treated as employer contributions," and thus not subjected to current income tax. The Internal Revenue Service has established two criteria that must be met before a state or local government can "pick up" employee contributions:

> First, the employer must specify that the contributions, although designated as employee contributions, are being paid by the employer in lieu of contributions by the employee. Second, the employee must not have the option of choosing to receive the contributed amounts directly instead of having them paid by the employer to the pension plan.

Rev. Rul. 81-35, 1981-1 C.B. 255.

## B.    Arizona's Income Tax Scheme

¶6        In 1979, Arizona adopted federal adjusted gross income ("AGI") as the starting point for computing Arizona taxable income.  1978 Ariz. Sess. Laws, ch. 213, § 2 (codified as amended at Arizona Revised Statutes ("A.R.S.") § 43-1001(2) (Supp. 2003) ("'Arizona gross income' of a resident individual means the individual's federal adjusted gross income for the taxable year, computed pursuant to the internal revenue code.")).  The income tax statutes list a series of items Arizona taxpayers must add to, or may subtract from, federal AGI to reach their Arizona taxable income.  *See* A.R.S. § 43-1021 (Supp. 2003) (listing twenty-seven additions); *id.* § 43-1022 (listing twenty-nine subtractions).

¶7        At the same time that the legislature adopted federal AGI as the starting point for calculating Arizona taxable income, it also amended the state tax code to allow state and local employees to subtract their mandatory retirement contributions from Arizona gross income.  1978 Ariz. Sess. Laws, ch. 213, § 2 (codified at A.R.S. § 43-1022(2) (Supp. 1978)).  Under the version of § 43-1022(2) adopted in 1978, "[c]ontributions made to the state retirement system, the judges' retirement fund, the public safety personnel retirement system or a county or city retirement plan" could be subtracted

6

from the employee's Arizona gross income.[3] In 1982, the legislature added mandatory contributions to the elected officials' retirement plan ("EORP") to the list of subtractions. 1982 Ariz. Sess. Laws, ch. 126, § 2 (codified at A.R.S. § 43-1022(2) (Supp. 1982)). In 1986, contributions to the corrections officer retirement plan ("CORP") were added to the list. 1986 Ariz. Sess. Laws, ch. 325, § 3 (codified at A.R.S. § 43-1022(2) (Supp. 1986)).[4]

¶8 In addition to allowing subtractions from Arizona taxable income of employee *contributions* to the various retirement plans, Arizona law also provided until 1989 that all *benefits* paid to employees under those plans could likewise be subtracted. *See* A.R.S. § 43-1022(3) (Supp. 1988). Thus, state and local employees could avoid Arizona taxation altogether on retirement benefits, regardless of whether these benefits derived from employers' contributions or employees' contributions. In 1989, however, *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), held that a similar Michigan statute violated principles of intergovernmental tax immunity, by favoring retired state and local governmental employees over

---

[3] We refer in this opinion to the Arizona state retirement system as "ASRS" and the public safety personnel retirement system as "PSPRS."

[4] The same law removed contributions to the judges' retirement fund from the list of permitted subtractions, as that fund had been combined with EORP. *See* A.R.S. § 38-802 (2001).

federal employees, who were not allowed to deduct retirement benefits from their taxable Michigan income.

¶9 The Arizona legislature promptly reacted to *Davis* by amending A.R.S. § 43-1022(3) to eliminate benefits received from state and local retirement plans from the list of permitted subtractions from Arizona gross taxable income.[5] 1989 Ariz. Sess. Laws, ch. 312, § 12. The same statute also removed from the list of statutory subtractions contributions to ASRS, EORP, and county or city retirement plans. *Id.* In 1991, the legislature removed mandatory contributions to CORP and PSPRS from its list of subtractions from Arizona gross income. 1991 Ariz. Sess. Laws, ch. 155, § 8 (retroactively effective to January 1, 1991).

¶10 Thus, for tax years after 1990, Arizona law has not provided for subtraction from gross income for mandatory employee contributions to any state or local retirement plans and it has treated benefits received from federal, state or local plans similarly. This did not mean, however, that all employee contributions were immediately subjected to current Arizona tax.

---

[5] At the same time, the legislature amended § 43-1022 to allow the annual deduction of up to $2500 of retirement benefits received by the taxpayer from either state or federal retirement systems. 1989 Ariz. Sess. Laws, ch. 312, § 12 (now codified at A.R.S. § 43-1022(2) (Supp. 2003)).

8

**¶11** Beginning in 1985, the legislature had enacted statutes authorizing certain state retirement plans to "pick up" employee contributions pursuant to I.R.C. § 414(h)(2). 1985 Ariz. Sess. Laws, ch. 294, § 4 (now codified at A.R.S. § 38-736(B) (2001) (authorizing ASRS pick up)); 1985 Ariz. Sess. Laws, ch. 309, § 4 (now codified at A.R.S. § 38-810(E) (2001) (authorizing EORP pick up)); 1986 Ariz. Sess. Laws, ch. 325, § 1 (now codified at A.R.S. § 38-892 (2001) (authorizing CORP pick up)). Prior to 1989, ASRS and EORP had already opted to pick up employee contributions pursuant to § 414(h)(2); these contributions were therefore not included in federal AGI, and thus not subject to current Arizona tax, notwithstanding the elimination of the previous subtractions in 1989.[6]

**¶12** Although CORP had received legislative authorization to pick up employee contributions in 1986, it did not elect to

---

[6] In addition to the subtractions from income previously set forth in A.R.S. § 43-1022(2) for contributions to state retirement plans, the statutes governing ASRS and EORP have long provided that member contributions "are exempt from state, county and municipal taxes." 1953 Ariz. Sess. Laws, ch. 128, § 22 (now codified at A.R.S. § 38-792(A) (2001) (ASRS)); 1985 Ariz. Sess. Laws, ch. 309, § 4 (now codified at A.R.S. § 38-811 (2001) (EORP)). The same statutes also previously exempted from state taxation benefits received from these funds; those exemptions were removed in 1989 in the same law that eliminated the authorization for subtractions from income. *See* 1989 Ariz. Sess. Laws, ch. 312, § 6 (ASRS); *id.* § 8 (EORP). Presumably, the legislature did not remove the exemption of the member contributions in 1989 in light of the preexisting pick ups under § 414(h)(2) by ASRS and EORP.

9

do so immediately; its pick up was first effective on July 1, 2000. PSPRS did not receive legislative authorization to pick up employee contributions until 1999, 1999 Ariz. Sess. Laws, ch. 50, § 4; 1999 Ariz. Sess. Laws, ch. 327, § 22 (now codified at A.R.S. § 38-843.01 (2001)), and its election was effective at the same time as CORP's.[7] Thus, throughout the period from 1989 to 2000, the thousands of state and local employees covered by these two plans paid current Arizona income tax on their employee contributions.[8]

## C. The § 1983 Action

¶13 Respondents are Arizona taxpayers, each of whom was employed by the federal government and who paid state income taxes on mandatory contributions to federal retirement plans. *See Kerr I*, 183 Ariz. at 4, 899 P.2d at 165. In 1989, respondents filed a class action under 42 U.S.C. § 1983 against

---

[7] Until 1989, the statutes governing CORP and PSPRS, like the statutes then governing ASRS and EORP, provided that both benefits received from, and employee contributions to, these plans were exempt from state taxation. A.R.S. § 38-852 (1985) (PSPRS); A.R.S. § 38-896 (Supp. 1986) (CORP). In 1989, the legislature removed the exemption for benefits from these statutes. 1989 Ariz. Sess. Laws, ch. 312, § 9 (PSPRS); *id.* § 10 (CORP). In 1991, the legislature removed the exemption for employee contributions from the governing statutes. 1991 Ariz. Sess. Laws, ch. 155, § 2 (PSPRS); *id.* § 6 (CORP).

[8] As of June 30, 2001, some 26,520 state employees were enrolled in PSPRS and CORP. Resp. Sep. App. Tab 9. This number was approximately thirteen percent of the total state employee population. *Id.*

the Arizona Department of Revenue ("ADOR") and ADOR officials, alleging that Arizona's income tax scheme violated the intergovernmental tax immunity doctrine codified in the Public Salary Tax Act of 1939, 4 U.S.C. § 111(a), by treating the employee contributions of federal employees differently than those of state employees. *Kerr I,* 183 Ariz. at 4, 899 P.2d at 165.[9] Respondents challenged both former A.R.S. § 43-1022(2), under which all employee contributions (even if not picked up by employers) could be subtracted from Arizona taxable income, and the use in current § 43-1001(2) of federal AGI as the base for Arizona taxable income, because it allowed state employees whose contributions were picked up to avoid current taxation. *Kerr I*, 183 Ariz. at 5, 899 P.2d at 166.

¶14 The tax court held that the former version of § 43-1022(2) violated § 111(a). *Id.* at 13-14, 899 P.2d at 174-75. It rejected, however, the taxpayers' attack on § 43-1001(2), holding that any disparity resulting from the application of I.R.C. § 414(h)(2) to determine federal AGI did not violate the intergovernmental tax immunity doctrine. *Id.* at 14-15, 899 P.2d at 175-76. The court of appeals affirmed the tax court with respect to former § 43-1022(2), *id.* at 16-17, 899 P.2d at 177-

_____

[9] The putative class included respondents and all Arizona taxpayers employed by the federal government who paid state income tax on their mandatory retirement contributions. *Kerr I*, 183 Ariz. at 4, 899 P.2d at 165.

11

78, but reversed with respect to § 43-1001(2), holding that the effect of adopting federal AGI was to discriminate against federal employees in favor of state employees whose employers had picked up the employee contributions. *Id.* at 14-15, 899 P.2d at 175-76.

¶15    After ADOR petitioned for review we vacated *Kerr I* and remanded for reconsideration in light of *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 585 (1995), which held that before suing under § 1983, plaintiffs must first exhaust all "adequate remedies." On remand, the court of appeals held that these plaintiffs had failed to exhaust their state administrative remedies and remanded to the tax court with instructions to dismiss the § 1983 action. *Kerr II*, 185 Ariz. at 467, 916 P.2d at 1183.

### D.    The Refund Suit

¶16    At the same time that they instituted the § 1983 action, respondents filed administrative claims with ADOR on behalf of themselves and the class requesting refunds based on Arizona's allegedly unconstitutional tax scheme. *See Kerr III*, 197 Ariz. at 215 ¶ 6, 3 P.3d at 1135. An ADOR hearing officer held that the agency had "no legal authority to pass on the legality of the statutory scheme or to recognize a class refund claim." *Id.* Respondents appealed to the Board of Tax Appeals ("BOTA"), which held that neither ADOR nor BOTA had authority to

12

entertain class refund claims. *Id.* ¶ 7. As to respondents'
individual claims, BOTA held that the adoption of federal AGI in
§ 43-1001(2) did not violate the intergovernmental tax immunity
doctrine and therefore refused to grant refunds for tax years
after 1990. *See Kerr IV*, 201 Ariz. at 129 ¶ 11, 32 P.3d at 412.
BOTA, however, held that those respondents who were parties to
the administrative proceedings should be granted refunds for
taxes paid on their mandatory contributions from 1985 through
1990. *Id.* at 128-29 ¶ 11, 32 P.3d at 411-12.[10] The governor
thereafter directed ADOR to make refunds for the tax years from
1985 to 1990 to all taxpayers who had filed timely refund
claims, whether or not they were parties to the administrative
action. *Id.* at 129 ¶ 12, 32 P.3d at 412.[11]

**¶17** Respondents then sought review of the BOTA rulings in
the tax court. That court denied respondents' motion to certify
a class consisting of "all current and former federal employees
who paid Arizona income taxes on contributions they made to

---

[10] In June 1998, the tax court awarded respondents'
attorneys twenty percent of each refund as fees. The court of
appeals affirmed that award. *Kerr III*, 197 Ariz. at 220, 3 P.3d
at 1140.

[11] ADOR later ruled that "taxpayers who were taxed on
mandatory retirement contributions to retirement plans
maintained by the federal government" for tax years prior to
1991 and who timely filed amended returns, refund claims, or
protective claims, were entitled to a refund of excess amounts
paid in those years. Ariz. Individual Income Tax Ruling 98-1,
*available at* http://www.revenue.state.az.us/rulings/itr98-1.htm.

United States Government retirement plans from 1984 to the present who have not received refunds of such taxes." *Kerr IV*, 201 Ariz. at 129 ¶ 13, 32 P.3d at 412. The court also denied the taxpayers' "alternative motion to certify a class of all federal employees who filed timely refund claims for one or more years from 1991 to the present." *Id.* The tax court, however, held that the use of federal AGI as the Arizona tax base in § 43-1001(2) violated § 111(a) because its effect was to discriminate against federal employees in favor of state employees. *Id.* ADOR appealed and respondents cross-appealed.

**¶18** In *Kerr IV*, concluding the reasoning of *Kerr I* was "incomplete and ultimately incorrect," 201 Ariz. at 130 ¶ 18, 32 P.3d at 413, the court of appeals rejected respondents' attack on § 43-1001(2) and thus rejected any claims for refunds for tax years after 1990. *Id.* at 131 ¶ 22, 32 P.3d at 414. The court held that the Arizona taxing scheme did not violate § 111(a), because it did not discriminate "'because of the [federal or state] source of pay or compensation.'" *Id.* (quoting 4 U.S.C. § 111(a)). *Kerr* IV concluded that the Arizona scheme "distinguishes not between state and federal employees, but rather between all those whose employers make or pick up their mandatory contributions and all those whose employers do not." *Id.* ¶ 26.

14

¶19     With respect to tax years 1985 through 1990, *Kerr IV* affirmed the tax court's conclusion that certification of a class of those whose refund claims had been denied would be redundant and unnecessary.  *Id.* at 133 ¶¶ 33-34, 32 P.3d at 416. As to those in the putative class who had not filed written refund claims, relying on *Arizona Department of Revenue v. Dougherty*, 198 Ariz. 1, 6 P.3d 306 (App. 2000) ("*Ladewig I*"), the court of appeals held that the tax court acted within its discretion in denying class status to those taxpayers who had failed to exhaust applicable statutory administrative remedies. *Kerr IV*, 201 Ariz. at 133 ¶ 35, 32 P.3d at 416.

¶20     Shortly after the court of appeals issued *Kerr IV*, we held in *Arizona Department of Revenue v. Dougherty*, 200 Ariz. 515, 29 P.3d 862 (2001) ("*Ladewig II*"), that a class action can be used as a vehicle for bringing and exhausting certain administrative claims.   Respondents   then   moved   for reconsideration of the class action rulings in *Kerr IV* with respect to tax years 1985 through 1990 in light of *Ladewig II*; they also sought reconsideration of the court of appeals' substantive rejection of their claims with respect to tax years after 1990.

¶21     The   court   of   appeals   granted   the   motion   for reconsideration and issued the opinion now under review, *Kerr V*, 204 Ariz. 485, 65 P.3d 434.   In *Kerr V*, the court of appeals

15

held that its analysis in *Kerr IV* rested on a "narrow, mistaken application of the literal language of 4 U.S.C. § 111." *Id.* at 491 ¶ 23, 65 P.3d at 440. Because the effect of § 43-1001(2) for tax years after 1990 was to require federal employees to pay current Arizona income tax on their mandatory contributions, while deferring such taxation for state and local employees, the court of appeals held that United States Supreme Court case law interpreting § 111(a) mandated that the Arizona scheme be struck down unless it was justified by "'significant differences'" between these classes. *Id.* (quoting *Davis*, 489 U.S. at 815-16). Finding none, *Kerr V* concluded that § 43-1001(2) violated the intergovernmental tax immunity doctrine. *Id.* at 493-95 ¶¶ 28-37, 65 P.3d at 442-44. As to class action issues, the court of appeals determined that it was best to allow the tax court "a fresh look" in light of *Ladewig II*, and remanded to the tax court for reconsideration of these issues. *Id.* at 496-97 ¶ 46, 65 P.3d at 445-46.

¶22 ADOR petitioned for review only on the intergovernmental tax immunity issue. We granted review because of the obvious statewide importance of the issue. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, Arizona Rule of Civil Appellate Procedure 23, and A.R.S. § 12-120.24 (2003).

16

¶23     The intergovernmental tax immunity doctrine has its genesis in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), which held that Maryland could not impose a tax on the Bank of the United States. *See Davis*, 489 U.S. at 810. Until 1938, the doctrine was expansively interpreted to prohibit state and federal governments from taxing the salaries of the other's employees. *See Jefferson County v. Acker*, 527 U.S. 423, 436 (1999), and cases cited therein.

¶24     In the late 1930s, however, the doctrine underwent a significant "contraction," *id.* at 436 n.6, at the hands of the Supreme Court. First, in *Helvering v. Gerhardt*, 304 U.S. 405 (1938), the Court held that the federal government could tax the salaries of employees of the Port of New York Authority. Then, in *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466 (1939), the Court expressly overruled a number of prior decisions and held that a state's imposition of an income tax on the salaries of federal employees placed no unconstitutional burden on the federal government. Since *Graves*, the Supreme Court has proclaimed "a narrow approach to governmental tax immunity." *United States v. New Mexico*, 455 U.S. 720, 735 (1982). Case law after *Graves* has made plain that the doctrine "barred only those taxes that were imposed directly on one sovereign by the other

or that discriminated against a sovereign or those with whom it dealt." *Davis*, 489 U.S. at 811.

¶25        In its decisions contracting the intergovernmental tax immunity doctrine, the Supreme Court has "recognized that the area is one over which Congress is the principal superintendent." *Jefferson County*, 527 U.S. at 425. Shortly after *Graves* was announced, Congress adopted the Public Salary Tax Act of 1939, "the primary purpose of which was to impose federal income tax on the salaries of all state and local governmental employees." *Davis*, 489 U.S. at 810. But, "concerned that considerations of fairness demanded equal tax treatment for state and federal employees," Congress also expressly waived in § 4 of the 1939 Act "whatever immunity would have otherwise shielded federal employees from nondiscriminatory state taxes." *Id.* at 812. Section 4, codified at 4 U.S.C. § 111(a), provides that "[t]he United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States," but only "if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." Section 111(a) thus "codified the result in *Graves*," and foreclosed subsequent broader judicial interpretation of the intergovernmental tax immunity doctrine. *Davis*, 489 U.S. at 812. The Supreme Court has held that the immunity provided in §

18

111(a) is "coextensive with the prohibition against discriminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity." *Id.* at 813.

**A.**

¶26    The initial inquiry under § 111(a) is whether a challenged state tax discriminates against federal employees "because of the source" of their compensation. If the alleged discrimination is not because of the federal source of income, but rather for some other reason, there is no violation of the intergovernmental tax immunity doctrine. *See Jefferson County*, 527 U.S. at 442-43 (holding that a facially nondiscriminatory Alabama occupational tax exempting those who held licenses under other state or county laws did not violate § 111(a), notwithstanding the fact that the plaintiff federal judges could never qualify for exemption, because the tax "does not discriminate against federal judges in particular, or federal officeholders in general, based on the federal *source* of their pay or compensation"); *Cheatham v. Eagerton*, 703 So. 2d 389, 391 (Ala. Civ. App. 1997) (holding that exemption of state law enforcement officers' per-diem subsistence allowance from state taxation did not violate § 111(a), notwithstanding that federal officers received no comparable allowance, because the tax scheme does not discriminate because of the "source" of the pay or compensation).

19

¶27     When the state scheme does discriminate because of the federal source of pay, the cases require a second level of analysis.  Imposition of a heavier burden on federal employees because of the source of pay may be justified only by "significant differences between the two classes."  *Davis*, 489 U.S. at 815-16 (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 383 (1960)).  In determining whether this standard of justification is met, decisions in the equal protection field "are not necessarily controlling."  *Id.* at 816.  Rather, the inquiry is whether the inconsistent tax treatment "is directly related to, and justified by, 'significant differences between the two classes.'"  *Id.* (quoting *Phillips*, 361 U.S. at 383-85).

### B.

¶28     The opinion below passed quickly over the first level of analysis required under § 111(a).  The court of appeals apparently started from the premise that because the adoption of federal AGI as the Arizona income tax base in § 43-1001(2) effectively required respondents to pay current tax on their employee contributions while deferring taxation for state and local employees whose contributions had been picked up under I.R.C. § 414(h)(2), the Arizona scheme necessarily discriminated against respondents *because of* the federal source of their pay.  *Kerr V*, 204 Ariz. at 440-41 ¶ 24, 65 P.3d at 491-92.

20

¶29     We reach a contrary conclusion.  At the outset, it is worth noting that every Supreme Court decision cited by respondents in which a state tax was found to violate § 111(a) or the intergovernmental tax immunity doctrine involved a tax statute which discriminated on its face against federal employees or federal property.  For example, in *Davis*, Michigan law provided a deduction for retirement benefits paid by the state or its political subdivisions, but not for benefits paid by others, including the federal government.  *Davis*, 489 U.S. at 805; *id*. at 814 ("It is undisputed that Michigan's tax system discriminates in favor of retired state employees and against retired federal employees.").  Similarly, the Kansas tax scheme struck down in *Barker v. Kansas*, 503 U.S. 594 (1992), provided a statutory deduction for benefits received by various state and federal retirees, but no deduction for military retirement benefits.  *Id*. at 596.  And, the Texas scheme invalidated in *Phillips* expressly treated lessees of state land differently than other lessees, including lessees of federal property.  361 U.S. at 379-80.  Thus, each of these cases quickly concluded that the challenged tax scheme discriminated because of the federal source of pay, and focused almost exclusively on whether such discrimination was justified by significant differences between the disadvantaged federal plaintiffs and the advantaged class.

**¶30** In contrast, § 43-1001(2) contains no overt discrimination against any taxpayer because of the source of pay. Every Arizona taxpayer, whether employed by the federal government, the State, a political subdivision, or a private employer, begins with federal AGI as the Arizona income tax base. And, in contrast to the situation that obtained for tax years before 1991, Arizona law no longer provides for subtraction from that base of contributions made by state employees, while denying such subtraction to federal employees.

**¶31** Respondents have not identified any Supreme Court decision in which a facially neutral state tax scheme was found to have violated the intergovernmental tax immunity doctrine. Respondents' citation to *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392 (1983), as an example of such a case is unavailing.[12] The Tennessee business tax at issue in *Memphis Bank*, like the Arizona income tax code, started with a federal AGI base. *Id.* at 394 & n.3. But a Tennessee statute then added to the base all income derived from obligations of states other than

---

[12]     *Memphis Bank* did not involve an income tax, and thus did not interpret § 111(a). Rather, the statute involved was 31 U.S.C. § 742, which allows nondiscriminatory franchise or other non-property taxes to be imposed on federal obligations or interest therefrom. *Memphis Bank*, 459 U.S. at 395-96. However, because § 742, like § 111(a), is a "restatement of the constitutional rule" of intergovernmental tax immunity, the analysis under each section is functionally the same. *Id.* at 396-97.

Tennessee. *Id.* Because federal AGI already included obligations of the United States, *see* I.R.C. § 103, the Tennessee law thus provided an express exemption from taxation for income from bonds issued by Tennessee and its political subdivisions, while taxing similar obligations issued by the United States and all other states. *Id.* The Tennessee statutory scheme thus expressly differentiated between interest received on that state's obligations and all other obligations, including those of the federal government.[13]

¶32 Respondents argue that even if there is no facial discrimination in § 43-1001(2), we must examine the "practical operation" of the Arizona scheme. *See Phillips*, 361 U.S. at 383. We agree. If the inevitable consequence of a facially neutral state tax code were that federal employees were taxed differently than similarly situated state employees because of the source of their income, or if the distinctions drawn in the state code were "only a cloak for discrimination against federally funded [pay or compensation]," *Barker*, 503 U.S. at 604-05, § 111(a) would plainly invalidate such a scheme. But this is not such a case. In "practical operation," § 43-1001(2) does not require that federal employees be taxed differently

---

[13] *Kraft General Foods, Inc. v. Iowa Department of Revenue*, 505 U.S. 71 (1992), upon which respondents also rely, is even further afield. That case did not interpret the intergovernmental tax immunity doctrine, but rather the Foreign Commerce Clause, U.S. Const. art. 1, § 8, cl. 3.

23

than state employees with respect to mandatory retirement contributions. Arizona taxes the employee contributions of those state employees whose contributions have not been picked up by their employers in precisely the same fashion as it treats the employee contributions of federal employees.

¶33    The distinction is not simply theoretical; it has had real practical effects on Arizona taxpayers. As noted above, from 1990 through 2000, the majority of the tax years covered by this litigation, the employee contributions of the thousands of state and local employees covered by PSPRS and CORP were not picked up, and each of these employees therefore paid current state tax on those contributions. While the treatment of numerous state and local employees in a fashion identical to the allegedly disadvantaged federal employees may not itself conclusively prove that a state scheme does not violate § 111(a), it surely demonstrates that the Arizona scheme is not simply a "cloak for discrimination."

¶34    More importantly, nothing in the Arizona scheme discriminates between taxpayers based on the federal or non-federal source of income; the distinction is instead based on whether a particular governmental employer has voluntarily opted to pick up the employee contributions and treat them as employer contributions. Section 414(h)(2) is permissive; it treats employee contributions as employer contributions for federal tax

24

purposes only if the employer voluntarily opts for such treatment.

**¶35** Respondents argue that because § 414(h)(2) only authorizes state and local governmental employers to pick up employee contributions, the effective distinction in § 43-1001(2) between those employers who pick up and those who do not necessarily discriminates against federal employees. This argument, however, takes far too narrow a view of the national government and the choices it has made. Section 414(h)(2) simply gave state and local employers the option to choose to pick up; without advance federal authorization, they could never choose to do so. The federal government, however, already had that option and, through its legislative branch, can exercise that option at any time it desires. In "practical operation," the federal government has thus far simply voluntarily opted not to pick up, just as some state employers voluntarily so opted in Arizona throughout the 1990s. Once the state employers made the choice to pick up, their employees' contributions were treated identically to those of governmental employers who had previously made this election. When and if the federal employer makes the same choice, Arizona tax law will treat its employees' contributions in an identical fashion.

**¶36** In short, § 43-1001(2) is not a subterfuge for discrimination against respondents because of their federal

25

source of pay, nor is Arizona's treatment of respondents' employee contributions a necessary consequence of their federal status. Rather, the difference is not who pays the employees, but the voluntary choice made by the employer as to whether the contributions should be picked up.

¶37    Cases dealing with military retirement benefits are particularly instructive on this point. *Barker* invalidated a Kansas tax scheme which allowed subtraction of various retirement benefits, both state and federal, from taxable income, because the statutes did not permit benefits received by retired federal military personnel to be deducted. *Barker*, 503 U.S. 594. In contrast, *Cooper v. Commissioner of Revenue*, 658 N.E.2d 963 (Mass. 1995), decided some three years after *Barker*, upheld a Massachusetts statutory scheme which exempted from taxation retirement benefits received from any governmental pension fund to which the taxpayer contributed during employment, while taxing benefits received from all other plans. The federal military retirement pension system involved no employee contributions, and all military retirees were thus subjected to Massachusetts income tax on their benefits. *Id.* at 964. The "practical operation" of the Massachusetts plan, at least with respect to military retirees, was thus identical to the Kansas scheme. Nonetheless, *Cooper* held that any differing treatment of military retirees from other government retirees in

26

Massachusetts was not because of the "source of pay," but rather because the federal government had designed their plan as non-contributory. *Id.* Because all non-contributory plans were treated equally — even though virtually all Massachusetts employees now participated in contributory plans[14] — any differing treatment was not because of the source of the military retirees' income, but rather because of a separate, non-pretextual, distinction. *Id.*[15]

¶38 The same is true here. Arizona tax law effectively distinguishes between taxpayers whose governmental employers choose to pick up employee contributions and those whose governmental employers do not choose to do so. That distinction is not "because of the source" of the employee's compensation

---

[14] Massachusetts established its contributory retirement system in 1936 and 1937. *Cooper,* 658 N.E.2d at 965. Thus, it was doubtful that any current state retiree participated in a non-contributory system, although the Supreme Judicial Court so assumed for purposes of analysis in *Cooper. Cf. Filios v. Comm'r of Rev.,* 615 N.E.2d 933, 936 (Mass. 1993) (noting theoretical possibility that state employee participants in old non-contributory plans were still alive).

[15] Respondents argue that *Cooper* is no longer good authority because the Massachusetts legislature has since changed the statutory tax scheme to exempt military retirement pay from state taxation. *See* Mass. 1987 Legis. Serv., ch. 139 (amending Mass. Gen. Laws Ann. ch. 62, § 2(a)(2)(E)). But nothing in the federal governmental tax immunity doctrine prevents a state from exchanging one non-discriminatory scheme for another, and we do not ordinarily infer any invalidity in a statute from subsequent legislative amendment.

27

and therefore does not run afoul of the intergovernmental tax immunity doctrine.[16]

## III.

¶39    For the reasons above, we hold that the court of appeals erred in *Kerr V* in concluding that the application of § 43-1001(2) to respondents violated the intergovernmental tax immunity doctrine codified in § 111(a).  We therefore vacate the opinion below insofar as it so held and reverse the judgment of the tax court to the same extent.  Because ADOR did not seek review of that portion of the opinion below remanding the class certification issue with respect to tax years 1985 through 1990 to the tax court for further consideration in light of *Ladewig II*, we do not address that portion of the opinion below.[17]  This

---

[16]    Because we conclude that use of federal AGI as the Arizona tax base in § 43-1001(2) does not violate the intergovernmental tax immunity doctrine, we do not need to consider whether in this case any discrimination is justified by substantial differences between respondents and state governmental employees. *Cf. Witte v. Dir. of Rev.*, 829 S.W.2d 436 (Mo. 1992) (upholding Missouri tax scheme which imposed current taxation on employee contributions to federal Civil Service Retirement System, while deferring taxation to other retirement plans, because of plaintiffs' failure to show a lack of significant differences between the two classes).

[17]    Our disposition of the intergovernmental tax immunity issue moots any question as to whether class certification should have been granted with respect to claims relating to tax years after 1990.

case is remanded to the tax court for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
John Pelander, Judge[*]

_____

[*]The Honorable Rebecca White Berch recused herself; pursuant to Article VI, Section 3 of the Arizona Constitution, the Honorable John Pelander, Judge of the Court of Appeals, Division Two, was designated to sit in her stead.